I would like to reserve two minutes for rebuttal and I will act accordingly. Could I give you a hypothetical and get your response to it? Suppose a policeman orders a man to disperse, face to face, speaking as clearly as I'm speaking to you, and at the same distance. He clears the bell. The man who has been given the order, though, is totally deaf. He's rushed Limbaugh before he got his cochlear implants. Just totally stone deaf. Does not hear the policeman. My thinking is that if the man did not disperse, he would be innocent of the crime because he did not have the mental element of knowledge of the order to disperse. But the policeman would be innocent of a constitutional violation because the policeman has probable cause to believe that the man heard the order to disperse. Give me your reflections on that. I absolutely agree. I agree. There would be probable cause because that officer stood there, gave the direction, saw that the man did not disperse, and didn't have any way to know he was deaf. Now, bringing it over to this case, I haven't listened to the DVDs yet because it's kind of time consuming, but I had my law clerk listen to them. And he told me, I'll check myself if it is necessary, he told me that the commands to disperse are really, really loud, and a reasonable policeman would believe that they could be heard for a minimum of a block and probably several blocks. Why wouldn't that make this case just like my hypothetical case? Because no one saw my clients anywhere near those loudspeakers. No police officer saw any of my clients do anything. And then toward the end, the police would not allow them to leave. When I read the affidavits from your clients, I did not, I do not at this moment recall, and you tell me if I miss something and give me the reference, I do not recall any of the three plaintiffs saying in their sworn affidavit, I did not hear the order to disperse. Did any of them say that? Yes, they did. Zachary Lyons said, Zachary, well, I'd have to pull the brief out. But Zachary Lyons said in his declaration that he heard one order to disperse at the end when everyone was totally blocked in already, and he told the officers he wanted to disperse and they wouldn't let him. Eric Thomas said he heard. Zachary Lyons says there he heard an order to disperse after it was too late to disperse, but he doesn't say he did not hear the earlier one. He said, I only heard one, and that was at the very end. That is what he says. And more important to the probable cause question, the office, you can't take my client's declarations and add them to what the officers knew to make probable cause. You have to look at what the officer knew. The arresting officer never saw my client, has no idea what any of them were doing or if even they were there. But he's the arresting officer. There's no record of the officer who actually took him into custody. Could we get back a minute to the plaintiffs? You say Lyons' affidavit should be construed to mean he did not hear any of the orders to disperse except for the last one. What about the other two plaintiffs? Eric Thomas says he heard perfunctory orders to disperse at the end when it was impossible to get out. At the what? At the end when it was impossible to get out. He said orders multiple? Well, there was an order to disperse and then there was an order to get down on the street. When he says he heard perfunctory orders, I ignore the perfunctory because that's just his feeling, his sentiment about the orders. What I'm interested in is the S on the end of the word order. Well, he said the only order or orders that he heard were when it was too late and impossible to get out because the streets were all blocked and they wouldn't let them out. On the DVDs, you see all three of my clients at various times talking to police officers, asking how people can get out and being told, go north, you can't leave. So first you have no evidence, in fact, negative evidence that they heard anything down at the beginning. They weren't there. David Seidenberg had left before any orders were given and was far north of what was going on. Lyons and Thomas never were at Westlake Center. They came in in this area and went north. And they were ahead of the main group of people. They were trying, along with the labor leaders, to negotiate an exit for everyone. You know, there's something I'm not getting. Rabbi Seidenberg says in the excerpt that when he went in there as a peacekeeper, he was saying his plan was and his action was to tell people they were risking arrest for no purpose. Why would he think they were risking arrest if he didn't know that they had been ordered to disperse? And also, why would he go in and tell them you're risking arrest for no purpose, disperse, if they can't? At that point, they could. And he was telling them they were risking arrest because people were acting as if they were simply going to stay there. There were no orders read at that time. He and the others had come back to try to help these kids from the community college to get out of the situation peacefully. And that's all they were doing there. And then after he had that conversation, he left and went north. He was dispersing. I mean, what does dispersing mean? Does it mean you can't go up 4th Avenue? That's what they were doing. And then they were blocked on the sides and at the end and from the back. Well, at some point when you're told disperse or you'll be arrested and people refuse to disperse, I guess then they could be blocked and prevented from leaving because they're under arrest, right? If they had been given an opportunity to disperse, and the case law is really clear on that, I would like to cite a case that was not cited in my brief. That's 2006, 9th Circuit, or excuse me, D.C. Circuit case Barham v. Ramsey, 434 F. 3rd, 565, D.C. Circuit, 2006. The Barham court case involved a mass arrest and without records of individual arresting officers and so forth. And the court found that Cullinan and Dellums from the 70s had clearly established the unconstitutionality of mass arrest without individualized, particularized probable cause. And the city had a policy that they would only arrest people if they had a record of individually speaking to the person and telling them to disperse. The city's policies are not part of the U.S. Constitution, so I don't really care what their policies are. What I'm a little more interested in is how the police can constitutionally deal with what has already become a violent and law-breaking assembly. Under your theory of what the law is, it would seem that until they talk with an individual and tell that particular individual you must leave and then give him a substantial amount of time to leave after assuring themselves that that individual understands the order, they can't do anything. And what that means is the most violent group owns the streets. No, Your Honor, that is not what it means. If an officer sees someone doing an act of violence, they certainly can arrest them for that if they're breaking the law. Well, you're talking as though they can deal with people one by one. But if you have an assembly of people acting in concert in the nature of a riot, then I don't see how they could apply that. Well, you don't have that here. You have disparate groups of people. The officers testified in their depositions, and it's in the record, that there didn't seem to be a coherent group. And you'll see that on the video as well. What they said was you had a large group. They're walking in the road, not just on the sidewalks. They're throwing things. They threw, I think they threw rocks and bottles and then some sort of rockets. And so... That's what they say happened back at Westlake Center. That was not happening proceeding up Fourth Avenue to begin with. Secondly, it may be appropriate to detain and contain the group and then take the time to give them a chance to disperse. They weren't arrested. My clients weren't arrested for shooting off rockets. They were arrested for failing to disperse. And they were never given any opportunity to disperse realistically. And the cases... That's only true if they didn't hear the orders when the way to disperse was still open, right? That's right. And the officers had no evidence that they'd heard the orders or where they were when the orders were read, except for the last one. They have to wait. This is what I don't quite understand. If the officers gave the orders but they weren't heard, is the law, and the law officers don't know that, is the law clear that that's a violation of constitutional rights to then make an arrest? Well, again, I think that's like the example of the deaf person. If the crowd doesn't hear because of some reasons that the officers can't know, then maybe they have probable cause. But here we have no evidence that my clients were the officers. I guess I'm not quite understanding. Is it your position that they were never ordered to disperse? My clients heard no orders to disperse until they were completely surrounded and then arrested. No. No. So, yes. But secondly for the... Your clients didn't hear it. They were far from the main crowd, actually. But is there evidence that there were no orders, that nobody heard any orders? There's no evidence that nobody heard any orders. There's just no particularized probable cause as to my clients. Okay. I think I understand your position. And I guess if I have a minute and a half, I'd like to reserve it. You've used your time, but we'll give you a minute. Thank you. Thank you. We will give you a minute to respond. May it please the Court, my name is Tobin Dale. I'm representing the City of Seattle and the three officers that were sued in this case. Captain Oliver, Captain Sanford, and Lieutenant Sano. The issue before the Court is whether or not Judge Lasnik was correct in finding there was probable cause to arrest these three protesters. The issue is whether the judge was correct on a motion for summary judgment as to whether  Now, I put you this question. Mr. Lyons says, at this point, I heard an order to disperse being broadcast through a loudspeaker. I'm looking at ER-6. I have not heard any prior orders. At that point, what he's referring to at this point, by that time, all exits were closed and he was subject to arrest. Taking that evidence alone, does that not create a triable issue of fact as to whether any orders were given before the exits were closed? There would be an issue of fact if the only order to disperse was given at bell and forth. The evidence before the Court is uncontroverted that over a period of seven, over a period of five plus blocks, seven disperse orders were given. With all respect, isn't it controverted by Mr. Lyons' statement? I had not heard any prior orders. He was there. He's saying, black, there was no prior orders. You have a mountain of evidence which, if I were to try a fact, I might accept, saying there were a lot of prior orders. But does that not create a triable issue of fact, whether the orders were given? Judge Bay, if I understand your question, you're asking at the end of the line, after five or so blocks at forth and bell, if his testimony is he heard no prior orders, would there be an issue of fact as to whether he had heard orders? I think it's uncontradicted that Lyons was walking up Fourth Avenue, right? Right. He says that there were no orders given until the exits were closed. And if he was there, if the trier of fact were to accept the fact that he was there, that he could hear, unlike the hypothet put by Judge Kleinfeld, and he heard no orders and he's credible, could not the jury find that all the other evidence that orders were given was not, does it not carry the burden of proof? I understand the issue before the Court is whether or not Lieutenant Sano, who is the arresting officer, had probable cause to arrest the individual at the end of the line. One of the facts that he must have in order to have probable cause is an order to disperse was given. He says they were given. That's right. In time for dispersal. That's correct. Lyons says he heard no such orders. That's correct. Does that create a tribal issue? In fact, right there. I don't believe it does. Why? And the reason why it doesn't is because Lieutenant Sano was the arresting officer. I'm not sure if he had an opportunity to view the from the field DVD that we put together at 17 minutes. I would encourage you to do so because the Court needs to play the role of an embedded reporter here to go back to determine whether Lieutenant Sano had probable cause. Could you go ahead and answer Judge Bea's question before I forget it? Yes, I will. The answer is no, it doesn't create a tribal issue. In fact, and the reason why it doesn't is because probable cause needs to be determined from Lieutenant Sano's perspective. Subjective perspective? Objective. Objective perspective. Objective perspective. And Lieutenant Sano was the one who issued the dispersal orders, and he issued seven over a period of five blocks. So when he got to the end of the line, in his mind, he had given the individuals in that group dispersal orders. But you have to credit Lieutenant Sano that he did say what he said he said. That's right. Mr. Lyons says that isn't so. I was there, and there were no orders given. Lyons is saying black. Sano is saying white. And my answer would be no. And you have a DVD which certainly corroborates Sano. That's wonderful. And the jury may say, what are we here for? This is a five-minute deliberation. I can understand that. But shouldn't that be the jury's function, not the trial court's function under a Rule 56 motion for summary judgment? I would answer no. And I would say no, because this issue was addressed in the Cullinane case, whether innocent bystanders who get swooped up can be arrested or not as part of the group. And the Court there turned and looked at what the tenor of the group was and said, is there a constitutional violation? If you happen to have people who get swooped up, they're innocent bystanders, let's say they did not hear an order to disperse, like Mr. Lyons said, until it was too late. I'm not talking about collective arrest versus individual arrest. I'm talking about a very simple issue of fact. Did Sano give an order to disperse when dispersal was possible? Sano says yes, and here's my DVD, and it proves it beyond a shadow of a doubt, says Sano. Lyons says I was there. I didn't hear that order. Why is that not a conflict in the evidence? That is a conflict in the evidence. And it's on a material point, because without the order to disperse, there cannot be any arrest. Right? That's correct. And if that's the only snapshot that we're looking at, then we may have a problem in this case. If that's the right way to read it, you lose on appeal. It's a genuine issue of material fact. Judge Lasnik actually took that very interrupting order. We don't defer to Judge Lasnik. It's de novo review. So we can't defer. What did Judge Lasnik do? I'm curious. What Judge Lasnik did is he took that very issue up, and it's on bottom of page four, top of page five of his order. And what he said is sometime prior to the issue, I'm reading from the second line at the bottom. Sometime prior to the issuance of the final dispersal order, a significant period of time after the initial order, the police had blocked means of egress. Plaintiffs might legitimately argue that at that point, at the end of the line there, the officers lacked probable cause to arrest for presently failing to obey dispersal orders because protesters had no means to comply. However, even at that point, the officers did have probable cause to arrest the plaintiffs and other protesters for previously refusing to disperse when directed and having the opportunity to do so. In the evidence we have before this Court, I tried to sum it up on the same exhibit. But he says here, Undisputed evidence demonstrates that after Lieutenant Sano issued the first dispersal order, protesters had the ability to comply with that order by leaving the demonstration. Lyons disputes that evidence. Judge Lasnik, who we have great regard for, may have overlooked that. What I tried to do to summarize some of the evidence for the Court is I took the same map that's up here on the board, plugged in where the appellants said they were during the protest and when they entered Fourth Avenue. And is there some indication that Lyons was in Tacoma until the last dispersal order was given? In other words, he wasn't in the area where he could have heard the dispersal order, so it's quite natural that he didn't hear it? Can you prove beyond a tribal issue of fact that he was not present when the dispersal orders were given? No, he cannot, Your Honor. And the reason he cannot is by his own testimony, each of the appellants testified they heard at least two orders. And a case can be made that Seidenberg heard three, because when he arrived at West Street, he asked for entry in. He said he was there to help. He asked for entry in. And the record is clear. By his own testimony, he said he was denied entry by the police officers and told to leave. Did he leave? He did the exact opposite. He circled around. And so what I tried to do for the Court is I put together this little chart of the map, and I plugged in. Kennedy. With a minute and 30 seconds, why don't you go to the second ground of possible affirmance, which is that qualified immunity applies? Absolutely, Your Honor. Even if the Court finds that Lieutenant Sano and the other officers made a mistake about probable cause, they nonetheless would be entitled to qualified immunity. We know under Saussure there's a two-part step, right? The first part is we look to see if there's a constitutional violation. If there's not, we stop there. Let's assume for sake of argument there was. We go to the next step. The next step is could officers reasonably but mistakenly believe their conduct did not violate a clearly established constitutional right? The answer to that is an unequivocal yes. It was reasonable for Lieutenant Sano and those other officers to believe the protesters who had received seven discreet dispersal orders over a period of five plus blocks who remained in the street blocking traffic could be lawfully arrested. And I would encourage the Court to take 17 minutes, or I'll have their clerks take 17 minutes and do that tape. Counsel. Yes, Your Honor. What exactly was the probable cause to believe that these three individuals heard the order to disperse, had an opportunity to disperse after hearing the order and failed to do so? To fail to do so is easy, but what I want to know is the uncontradicted evidence that they heard an order and had an opportunity before everybody was there prior to their arrest. Your Honor, in the earlier argument, you mentioned that actions speak louder than words. And in this case, we have both actions and we have both words. Lieutenant Sano was the arresting officer, and there were five factors that he looked at, among others, in making the arrest of individuals who stayed in the group. And here's what he looked at. Starting at Westlake Center, which is at 4th and Pine, he observed a large crowd of protesters in that street refusing to disperse. Things became violent after 8 o'clock. And in that context, we had a captain take a bottle or a rock to the eye. And it was only in response to aggression against police officers that the police officers escalated their response. So to answer your question, at 4th and Pine, he observed a large group of protesters in the street blocking traffic and pedestrians. Okay. That shows me they've got a riot on their hands. That's right. They better do something about it. But it still doesn't show me. One possibility that occurred to me is when it says at ER 6, I heard an order to disperse being broadcast through a loudspeaker. I had not heard any prior orders. One way not to hear prior orders is you weren't there when they were given. Another way would be if, just like at the airline terminal, you don't hear some announcements because you're talking to somebody, so you're not paying any attention to them. I want to know what evidence is there that these people heard them. The evidence that we have is that Lieutenant Sano broadcast these over a public address system that were mounted on a truck. They were loud orders. They were given in an authoritative fashion. They were given over a period of an hour and a half over five different intersections. That's what Lieutenant Sano, the arresting officer, did. In answer to Judge Kleinfeld's question, at ER 4, Mr. Lyons himself says that he, please, then left the labor temple. In other words, he puts himself with Eric Thomas and Michael Mazzetti. If Eric Thomas was with him and Eric Thomas heard these warnings, there's circumstantial evidence that Lyons, who is not deaf, heard these warnings. That's correct. End of story. Okay. What happened to Rabbi Seidenberg's claim for battery? Was that settled? We brought a third motion for summary judgment, and that was dismissed on the third motion. And simultaneously, we reached a settlement. Yes, that's what I wanted. Okay. Thank you. We've helped you use it, but your time has expired. Thank you. What Eric Thomas said is that the only time he heard any orders was after they were blocked. Could you talk louder? I'm sorry. Direct your rebuttals to the second column, associate versus cats, and why that doesn't apply. Could you give these policemen qualified immunity, please? The second? I'm now blanking. Was there a well-established constitutional right which these policemen reasonably ignore? Yes. Ignore it unreasonably. Yes. A right not to be arrested except if there is individualized probable cause. That's addressed in Barham, which I quoted, which I cited, and relying on Cullinane and Dellums, which are from the 70s. I mean, this goes way back. Right. But, see, they're all on the street. So does this put us in the situation of saying that in a situation where there's a protest and there are some warnings given that we have to go to trial to determine whether or not the individuals heard them or should reasonably have heard them? If there's no evidence anywhere that my clients were anywhere where warnings were given. Well, that's not so. Except for at the very end. Well, no, no. Mr. Lyons was a little bit ambiguous as to whether he heard warnings before or not. In 179ER, it says, As the various police lines closed in blocking exit routes. But it doesn't say they had all closed in and all exit routes were blocked and order for the crowds to disperse was given by the Seattle police. He's a little ambiguous there. I don't think that's Lyons if you're on page 179. Is it? I'm reading from ER 179. Line 14 through 15. That's Mr. Thomas's declaration, not Mr. Lyons. No, no. I said Mr. Thomas. From that and from Mr. Lyons' declaration that he was with Mr. Thomas from the time they left the labor temple at 845 p.m., one can assume that he had the opportunity to hear what Mr. Thomas heard when Mr. Thomas heard him. But this is a red herring when it comes to the issue of qualified immunity. This is additional testimony. The officer didn't have this evidence. The officer was in a truck and couldn't see anybody. And it's the arresting officer. And we have no evidence that anyone saw any of these three people. What you say is that unless the officer could identify the person he was about to arrest having the warning, he couldn't arrest anybody like that because there wouldn't be individualized killing, right? Well, that's what happened in several of the cases that we've cited. I am saying that if you can't identify that this individual was in the crowd, there's no evidence that Lyons or Thomas or Seidenberg were anywhere near where the earlier warnings were given. Well, your theory, where did the police just went charging off? Eventually they did. They surrounded them. There's the radio tape where the officer says, people want to leave, what do we do? And the commander says, push them up the street. And he says, it's blocked off in the north. And the commander says, too bad. I'm thinking, suppose I'm organizing a riot and I want to make sure none of my people can be arrested. So I just have them chant, hey, hey, ho, ho, WTO has got to go, and chant it really loud so they're not going to hear any commands to disperse. Sounds to me as though that works. I have just beaten the system and I can run my riot and no one can be arrested for refusing to disperse. No, that's not what I'm saying. That's not what I'm saying. Well, why wouldn't that follow from what you're saying? Because there's no evidence my clients were anywhere where the warnings were read until the last one. You have to take the evidence in the light most favorable to the account. What about the DVDs? The DVDs don't show my clients where those warnings were. All right. I think we have your position. Thank you. Thank you. The case just argued is submitted for decision. We'll hear the next case, which is two versus the National Transportation Safety Board.
judges: Schroeder, Kleinfeld, Bea